In the Matter of EMANUEL V. OCCHIONERO, an Attorney, Respondent. JOHN R. MURRAY, as District Attorney of Oswego County, Petitioner.

Fourth Department, June 30, 1961.

*John R. Murray, District Attorney* of Oswego County, petitioner in person.

*William J. Powers, Jr.,* for respondent.

*Per Curiam.* Charges of professional misconduct, unethical practices, deceit and conduct prejudicial to the administration of justice have been preferred against the above-named attorney-respondent (hereinafter called respondent). His answer set up issues of fact and the matter was referred to a Justice of the Supreme Court (whom we shall refer to as the Hearing Officer) to hear the issues and to report his findings to this court.

Hearings have been had and the report of the Hearing Officer has been filed. In that report it is found that respondent has violated several Canons of Professional Ethics and that the charges against him have been sustained. All of these proceedings have been conducted in accordance with section 90 of the Judiciary Law, and the respondent's rights have been carefully observed and fully protected. The matter now comes before us on a motion to confirm the report of the Hearing Officer.

The charges may be divided into two general categories. The first embraces, and revolves around, contentions that respondent misled and deceived a client (Mrs. Sticca) to induce her to sign a separation agreement. This client, of Italian ancestry, does not understand or read English. Respondent speaks and reads both English and Italian. The client came to America from Italy and consulted respondent in an effort to obtain support from her husband who was then living in Ohio.

Upon being retained, respondent entered into negotiations with the husband and his attorney for the purpose of obtaining a separation agreement determining and settling the respective rights of his client and her husband. As a result the husband commenced sending small amounts for his wife's support. Respondent endeavored to effect a lump sum settlement. Various amounts were discussed with his client and with the husband's attorney and finally it is claimed by the respondent that a settlement of $1,500 was reached.

Then, however, for the first time there entered into the discussions, a question of the relinquishment by Mrs. Sticca of an interest in and possession of, certain real property in Italy owned by her husband. This question played a very important part in subsequent negotiations. Mrs. Sticca, after being told about proposed relinquishment of her rights in the Italian property, refused to sign the agreement unless either all references to the property in Italy should be eliminated or she should be paid $2,500 rather than $1,500. The agreement was thereupon returned to Ohio unsigned.

In the meantime Mrs. Sticca through respondent had started a separation action in New York State. Thereafter the husband started to pay $75 a month for support. While negotiations continued a default judgment was entered in the separation action, Supreme Court Justice E. HOWARD RINGROSE, presiding, but no directions for payment for support were contained in the decree. This question was deferred because of the pending negotiations.

From this point on there are substantial and material variances in the testimony. Respondent testified that Mrs. Sticca

finally agreed to accept $1,600 in full settlement of all her rights including a renunciation of any claims to the Italian property and that she signed an agreement to that effect with full knowledge and understanding of all of its terms. Mrs. Sticca, on the other hand, testified that the respondent told her that if she signed the agreement in one place she would be paid $600 for arrears of support but that if she signed it in two places she would receive $1,600 but would renounce her rights to the property in Italy. She said that she was told by respondent that if she was paid only $600 and did not accept the additional $1,000, the Italian property would not be affected. She stated that she had refused to renounce her interest in the Italian property and signed the agreement with the understanding that she was not doing so. Of course, she had to rely completely on respondent for advice as to the language and effect of the agreement.

Actually, the agreement did not contemplate two signatures but only one and it was a complete agreement which bound Mrs. Sticca to accept a total of $1,600 in full settlement of past and future support and of her interest in the Italian property. She received and accepted $600 under the agreement but she never received the balance of $1,000. By the terms of the agreement she was obligated to move from the house in Italy within 90 days and if she did so she would receive the balance of $1,000. However, if she failed to so remove, her husband could cause her to be removed and deduct the expenses of so doing from the $1,000 balance. Thus the agreement was complete in itself and when she signed, her rights were fully defined and she had no right to rescind or renounce at will.

After Mrs. Sticca had signed the agreement she returned to the respondent's office with her sister and respondent assured them that by signing she had not renounced her interest in the Italian property. When the $600 check was received by respondent, he deducted $70, $50 for fees and $20 for disbursements, and gave Mrs. Sticca a check for $530.

Thereafter respondent called the attention of Justice RINGROSE to the previous monthly payments and induced him to award $75 per month for the support of the wife. Just why this was done is difficult to understand, in view of the agreement. There is nothing in the record to show that the separation agreement was called to the attention of Justice RINGROSE.

Mrs. Sticca then returned to Italy. Her husband sought to remove her from the house, on the basis of the agreement she had signed. She resisted and during the controversy, Mrs. Sticca's brother wrote respondent a letter asking certain ques-

tions. Respondent answered the letter. It is obvious that respondent understood that the answers to the questions might be used by Italian attorneys in the controversy pending in Italy. In his answers to questions propounded, respondent said that the $600 payment would be an advance but by not accepting the remaining $1,000 "The $600 would have been returned or would have been used toward the maintenance and support of Mrs. Sticca." He also said that Mrs. Sticca had not renounced her right to the property and that the agreement "would have no value" as she had not accepted the other $1,000. He answered further that because the document would "have no legal value" unless the balance of $1,000 was accepted and that by signing the agreement Mrs. Sticca had not given her husband the privilege of getting back the house or any other property in Italy. He also advised that by not having received the balance the agreement "became null and void and of no legal efficacy." When the respondent answered these questions he knew that the answers were false, and the Hearing Officer so found.

Furthermore, respondent submitted an affidavit for use in the Italian courts, in which he said that in his opinion Mrs. Sticca had a meritorious cause of action for rescission of the separation agreement which he had negotiated and approved. Finally, after many months, and for the first time, respondent took the position that Mrs. Sticca was bound by the agreement but he advised her that if she was dissatisfied she could start an action to rescind.

The Hearing Officer decided the issues of fact as to the first charge, against the respondent, thereby holding that Mrs. Sticca had been deceived by the respondent and that she had signed the agreement without knowledge of its provisions in relation to the Italian property. He found that the facts clearly indicated the truth of Mrs. Sticca's contentions, and that respondent had deceived Mrs. Sticca to her detriment. He also found that the acts of respondent in relation to his representation of Mrs. Sticca did not conform to the ethical standards required of an attorney. He found that the first charge had been sustained.

The second charge, simply stated, was that the respondent signed Mrs. Sticca's name, without her consent, to an affidavit which was false. As we have said, respondent had advised Mrs. Sticca that she had a good cause of action in rescission but that she had to return to New York State to start an action. She returned and an action was started. The respondent represented her and again advised her that she had a meritorious case because she did not understand the contents of the separa-

tion agreement. This, despite the position he had taken that he had carefully explained the agreement to her before she signed.

The defendant moved to set aside the service of the summons on the ground that the court had no jurisdiction. This motion came before Justice EUGENE F. SULLIVAN, who granted the motion. However, in that action the respondent submitted an affidavit in opposition to the motion, purportedly signed by Mrs. Sticca. She came into his office and he dictated an affidavit and as he dictated it in English he explained it to her in Italian. He said that she agreed with his statements. One of the statements that he dictated was that she did not fully comprehend or understand the meaning of the provision for the relinquishment of her rights in the Italian property at the time she executed the agreement. The affidavit stated that she signed it and accepted the $600 payment because she was in need. After the affidavit was dictated Mrs. Sticca was anxious to leave the office so respondent asked his stenographer to estimate the length of the affidavit when typed and he had Mrs. Sticca sign her name on a blank piece of paper at the space indicated by the stenographer as the estimated end of the affidavit. It was signed before the paper was typed. Mrs. Sticca then left the office. It developed, however, that the stenographer had underestimated the length of the so-called affidavit and that it would run beyond the place signed by Mrs. Sticca. Therefore her signature was not used nor could it be used. Respondent then directed his stenographer to type the affidavit and to sign the name of Gentilina Sticca and the name of the respondent on the copy, so that it would appear that Gentilina Sticca had signed the affidavit and had sworn to it before the respondent as a notary public. This paper was delivered to Justice SULLIVAN for his consideration on the motion to dismiss, as though it were a copy of an actual signed and sworn original affidavit and the paper was so considered by Justice SULLIVAN on the motion.

It was arranged that Mrs. Sticca would come to the office later and sign the original of the affidavit but she never did so and the court was never so notified but was led to believe that a copy of a properly executed affidavit had been presented.

On the hearing the respondent said that he had saved the paper that Mrs. Sticca had signed but he was unable to produce it. Mrs. Sticca denied signing the paper.

The Hearing Officer accepted the respondent's version of the facts in relation to this so-called affidavit and we have also done so. Mrs. Sticca's version was quite different in certain

material respects. However, respondent's own version, which we have recited, does not help him. The Hearing Officer has found that respondent was unethical in relation to the unsigned purported affidavit of Mrs. Sticca and his use thereof in the courts.

We confirm the report in all respects. The respondent's misstatement of the contents of the separation agreement to Mrs. Sticca to induce her signature was highly unethical and a very serious violation of the Canons of Ethics and of his obligations to his client and to the profession generally. Further, the submission of a false affidavit for use in an Italian court proceeding was reprehensible as was the letter he wrote for use in Italy which contained statements that he knew to be false at the time. In addition, his activities in respect to the so-called affidavit of Mrs. Sticca and its use before Justice SULLIVAN in the rescission action was, at least, a grave breach of his professional responsibilities.

We find the respondent guilty of professional misconduct, deceit, and conduct prejudicial to the administration of justice. The practices in which he indulged cannot be condoned but their seriousness must be recognized. Disciplinary action is required.

It is our determination that the respondent should be suspended from the practice of law for a period of one year and until the further order of this court.

Present—WILLIAMS, P. J., BASTOW, HALPERN, McCLUSKY and HENRY, JJ.

Report of Referee confirmed and order entered suspending respondent from the practice of law for one year and until the further order of the court.